## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| JOHN ROMANO | : | |
| Debtor | : | Bankruptcy No. 05-15742bf |

.................................................

### MEMORANDUM

.................................................

Two motions are presently before me in this chapter 7 bankruptcy case—described by the trustee as a "twisted, sad case." Trustee's Memorandum, at 1.[1] The first motion, filed on April 5, 2007, is the trustee's request to sell the debtor's residence at public auction, pursuant to 11 U.S.C. § 363(b) and (f). The second motion, filed on April 26, 2007, is the debtor's motion to amend his exemption claims, so as to declare his residence exempt under Pennsylvania law. Previously, the debtor had elected the federal exemptions found in section 522(d), including its homestead exemption.

The trustee opposes the debtor's request to amend his exemption claims, while the debtor opposes the trustee's request to sell his residence. The only creditor who has filed a proof of claim in this case, Ms. Joanne Ardary, aligns with the trustee's positions.

An evidentiary hearing was held on both contested matters, and the following facts were proven.

---

[1]The trustee's bleak description is based upon the failure of the debtor to consummate a settlement agreement, as will be detailed below.

I.

The debtor, John Romano, and his wife, Mary Romano, live at 7411 Hill Road, Philadelphia Pennsylvania. They purchased this realty around 1968 and own it as tenants by the entireties. Presently, only the debtor and his spouse reside in the property. They are elderly and not in good health.

Ms. Joanne Ardary is the debtor's niece. When her uncle, Mr. Samuel Romano, the debtor's brother, died in 1998, the debtor obtained certain insurance proceeds arising from this death. Ms. Ardary claimed that she was the rightful beneficiary to a portion of those proceeds, and, after trial, the state court agreed. She obtained a judgment against the debtor in December 2004. See Ex. A-3.

On April 22, 2005, Mr. Romano filed a voluntary petition in bankruptcy under chapter 7. Terry P. Dershaw, Esquire, was appointed interim trustee under section 701 and, at the conclusion of the creditors' meeting, became the permanent chapter 7 trustee. 11 U.S.C. § 702.

The debtor's bankruptcy petition asserted that he had no non-exempt assets to distribute to creditors.[2] He filed his bankruptcy schedules at the same time as his chapter 7 petition in April 2005. His schedule of real property disclosed his ownership

_____

[2]While a bankruptcy court may take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries, bankruptcy petition and bankruptcy schedules filed by the debtor in this case, see Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995), the parties in these contested matters offered a copy of the docket entries in evidence as Ex. A-2, and a copy of the schedules as Ex. A-17.

interest in the Hill Road residence, valued at $130,000 with a mortgage lien of only

$37,400, as well as a Florida trailer-home valued at $15,000 with no secured claims

against it.  Both real properties were claimed to be held as tenants by the entireties.  See

Schedules A and D, Ex. A-17.  On the debtor's list of his personal property, he disclosed,

inter alia, four Individual Retirement Accounts, totaling about $18,000.  He also listed an

automobile valued at $6,000.  See Schedule B, Ex. A-17.

On the debtor's Schedule C, the list of exemptions, he checked off the box

located toward the top of the document, stating that he elected the exemptions available to

him under 11 U.S.C. § 522(b)(1) and 522(d): the federal bankruptcy law exemptions.[3]

And, consistent with this election, the debtor asserted that his automobile was exempt

under 11 U.S.C. § 522(d)(2) and (d)(5).  The debtor also claimed as exempt under 11

U.S.C. § 522(d)(10)(E) all four IRA accounts.  Inconsistently, however, the debtor

claimed his interests in his Philadelphia residence and Florida trailer as exempt under

Pennsylvania entireties law.  See Schedule C, Ex. A-17.

On June 13, 2005, the chapter 7 trustee commenced but did not conclude

the meeting of creditors under 11 U.S.C. § 341.  The docket entry (No. 7, Ex. A-2)

reflects that the trustee did not conclude this meeting as he intended to investigate the

debtor's assets.  Although there is no corresponding docket entry, it appears that this

creditors' meeting was resumed and concluded on September 12, 2005.

---

[3]By virtue of section 522(b)(1), individual debtors can elect between the federal
exemptions found in section 522(d) and state law exemptions, unless state law precludes an
election of the federal exemptions.  Pennsylvania has not opted out of the federal exemptions.
See Kaplan v. First Options of Chicago, Inc., 189 B.R. 882, 888 n.6 (E.D. Pa. 1995).
Accordingly, debtors in this district may choose between state and federal bankruptcy
exemptions.

Ms. Ardary filed an unsecured proof of claim dated July 21, 2005, in the amount of $28,331.96, based upon her prepetition state court judgment. Ex. A-1. On October 12, 2005 (within 30 days of the conclusion of the § 341 meeting, see Fed. R. Bankr. P. 4003(b)[4]) Ms. Ardary filed objections to the debtor's exemption claims. Ms. Ardary objected to the debtor's attempt to claim the federal exemptions under section 522(b)(1) as to some property interests and the state law exemptions under section 522(b)(2) as to other property interests.  See In re Harless, 187 B.R. 719, 727 (Bankr. N.D. Ala. 1995) ("[T]he debtor could not pick and choose from both federal and state exemptions in the same bankruptcy case."); see also In re Brannon, 476 F.3d 170, 174 (3d Cir. 2007) ("The Bankruptcy Code provides two alternative plans of exemption."); In re Kahan, 28 F.3d 79, 81 (9th Cir. 1994) (section 522(b)(1) permits a debtor to choose between exempting assets under either federal or state law).[5]  She also complained that the debtor could not claim the four IRA accounts as exempt under section 522(d)(10)(E).[6] See Ex. A-3.

---

[4]Mr. Romano's bankruptcy case was commenced prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and prior to the adoption of Interim Bankruptcy Rules associated with this legislation.

[5]While a debtor in Pennsylvania may elect either the federal bankruptcy exemptions or the state exemptions by virtue of section 522(b), she "cannot elect the most favorable exemptions in each scheme: [s]he must weigh the advantages of each scheme and then choose one or the other." Matter of Dyke, 943 F.2d 1435, 1438 (5th Cir. 1991). (Indeed, in joint bankruptcy cases, both spouses must make the same election. See 4 Collier on Bankruptcy, ¶ 522.04[6] (15th ed. rev. 2007)). In other words, a debtor cannot claim some property as exempt under state law and other property as exempt under federal bankruptcy law. Section 522(b) requires him to choose only one exemption scheme for all property. Indeed, Schedule C instructs that a debtor can elect between the exemptions under 522(b)(1) or (b)(2) by "check[ing] one box."

[6]The objection misstated the challenged exemption as § 522(d)(1)(E).

4

Notice of these objections was provided to the debtor and the chapter 7

trustee, with a hearing scheduled for November 16, 2005 and an answer deadline of

November 1, 2005.  The debtor did not file any response to Ms. Ardary's objections; nor

did he appear at the November 16th hearing.

By order dated November 21, 2005, I entered an order sustaining Ms.

Ardary's objections to the debtor's attempt to claim both federal bankruptcy and state law

exemptions.  Given that the debtor's Schedule C checked off the box electing federal

exemptions under section 522(b)(1), I disallowed the debtor's exemption claims under

Pennsylvania law for both pieces of realty.  In addition, as the debtor offered no evidence

in support of his exemptions under section 522(d)(10)(E), I also disallowed his IRA

exemptions.  Ex. A-4.  Ms. Ardary filed a certificate stating that a copy of the November

21st order was served by her attorney upon the debtor and his counsel.  See Ex. A-2

(Docket #19).[7]

Based upon this ruling disallowing certain exemptions, Mr. Dershaw, the

trustee, gave notice that he intended to administer non-exempt assets in this case, see Ex.

A-2 (docket entry #18), and engaged counsel to the trustee.  See Ex. A-2 (docket entries

##16, 20, 24, and 26).  Once again, the court clerk docketed a certificate stating that

notice of this order permitting the trustee to engage counsel was sent to the debtor and

debtor's counsel (among others).  Ex. A-2 (docket entry #27).

On April 12, 2006, the trustee's counsel filed a complaint against Wachovia

Corporation, seeking turnover of the four IRA accounts that had been declared non-

---

[7]The court clerk also docketed service of this order on November 24, 2005, upon
the debtor, debtor's counsel, the chapter 7 trustee, counsel to Ms. Ardary, and the United States
trustee.  See Ex. A-2 (Docket entry  #17).

exempt.  Ex. A-6.  Seven days later, he withdrew that lawsuit.  But on May 24, 2007, he

brought a similar lawsuit against Wachovia Bank, N.A. and Wachovia Securities LLC.

Ex. A-2 (docket entry #49); Ex. A-13.  The trustee testified that, after commencement of

this second lawsuit, he discovered that only one IRA account was titled in the debtor's

name.  This account has a balance of $8,700, and the Wachovia defendants are awaiting

the outcome of the debtor's instant motion to amend exemptions before turning over the

proceeds of this account to the trustee.

Insofar as the debtor's Philadelphia realty is concerned, on May 23, 2006

the trustee filed an application to engage a real estate broker to sell the debtor's residence

on Hill Road.  The application included a proposed listing agreement between the broker

and the trustee, with an asking price of $260,000.  Ex. A-6.  On June 5, 2006, the

application was granted as unopposed.  Ex. A-7.  A copy of the order approving the

trustee's engagement of a real estate broker was sent to the debtor and the debtor's

counsel on June 8, 2006.  Ex. A-2 (docket entry #31).

The debtor conceded during his testimony in this contested matter that he

removed the "for sale" signs posted by the broker on his property.  He also testified that

the real estate broker never attempted to enter the residence.  (I do not find his testimony

credible regarding the failure of the broker to seek access to the realty.)  The trustee

testified that he has had inquiries about the property but no offers.  There was no evidence

that any interested buyers had been permitted to inspect the property.

On July 6, 2006, the trustee filed a motion to compel the debtor to turn over

to him title to the Florida trailer and all funds that the debtor had withdrawn from his IRA

accounts.  Ex. A-8.  On July 26, 2006, the debtor responded in opposition to this turnover

motion, asserting that the IRA accounts and the trailer were exempt property under
Pennsylvania law.

At a hearing held on August 2, 2006, the trustee acknowledged that he had
learned from Wachovia that there was only one IRA account titled in the debtor's name
held by Wachovia, and that the debtor had not withdrawn any funds from that account.
Thus, he acknowledged that he could not properly seek turnover of its proceeds from the
debtor. By order dated August 3, 2006, however, I did direct that the debtor surrender his
certificate of title to the Florida trailer to the trustee, as that property had been determined
as not exempt in November 2005. Ex. A-9.[8]

Apparently, the debtor complied with this turnover directive, giving the
trustee his certificate of title to the trailer. However, the trustee testified at the hearing on
the instant motions that, due to liens assessed against the trailer by the owner of the
location upon which the trailer sits, there was insufficient equity to justify selling the
Florida trailer.

On March 5, 2007, the trustee filed an application to appoint an auctioneer
to sell the Philadelphia realty owned by the debtor and his wife at public auction. Ex. A-
10. The application to engage a professional was approved as unopposed on March 21,
2007. Ex. A-11.

As noted earlier, on April 5, 2007, the trustee filed a motion to sell the
realty on 7411 Hill Road free and clear of all liens (with all valid liens attaching to the
sale proceeds) at public auction under "[s]ections 363(b), (f), and (m) and 105 of the

_____

[8]My notes of the August 2, 2006 hearing reflect that the debtor, through counsel,
stated that he might seek either to vacate the November 21, 2005 order sustaining Ms. Ardary's
objections to his exemption claims or move to amend the exemptions.

7

Bankruptcy Code[.]"  Motion, ¶ 14.  The certificate of service attached to the motion

stated that it was served "by regular mail upon all creditors and parties in interest."  The

proposed order attached to the motion contains a service list that includes the debtor and

his attorney.  There is no evidence that Mrs. Romano was served with this motion to sell.

The sale motion itself contains no provision for a minimum bid at the

auction.  Nor does the motion provide for opportunity for matching bids by Mrs. Romano.

Indeed, the motion itself does not expressly provide for the sale of Mrs. Romano's

interest in the realty.  Instead, it requests only that the sale be free and clear of all liens,

with the liens attaching to the proceeds of sale.  Motion, ¶ 14.

The debtor opposed this relief, arguing that Ms. Ardary's judgment against

only the debtor does not permit this creditor to execute against entireties property under

state law,[9] and that the trustee should not be permitted to proceed against the property to

the detriment of the debtor and his wife.

Also mentioned above, on April 26, 2007, the debtor filed a motion for

leave to "change his Schedule 'C' option to 'State Exemptions' and/or ordering that the

real property situate [at] 7411 Hill Road, Philadelphia, PA and debtor's Individual

Retirement Accounts are exempt by virtue of the hardship presented."  Motion To Change

Election of Exemptions, Wherefore Clause.  The trustee and Ms. Ardary oppose such

relief, for reasons to be discussed.

---

[9]See, e.g., Napotnik v. Equibank and Parkvale Sav. Ass'n, 679 F.2d 316, 319 (3d
Cir. 1982); Klebach v. Mellon Bank, N.A., 388 Pa. Super. 203 (1989); Reliance Ins. Co. v.
Schoolfield Constr. Co., 14 Pa. D. & C. 4th 490, 494 (Pa. Com. Pl. 1992).

II.

Before addressing the legal issues posed by the two motions, I need mention one last circumstance, as it affects the parties' positions in these contested matters.

A hearing was first held on both pending motions on June 20, 2007.  At that hearing, the parties reported that the matter was settled.  (A transcript of that hearing was offered in evidence as Ex. A-14.)  The settlement was agreed to by all parties, including Ms. Ardary (through her counsel), the trustee (who was present and with counsel) and by Mr. and Mrs. Romano, who were also present in court with Mr. Romano's attorney.  The terms of the settlement placed upon the record were as follows.

Within two weeks of June 20th Mr. Romano would pay the trustee $20,000, of which $5,000 would be paid from the IRA funds held by Wachovia.  From those funds, the trustee's commission under sections 326 and 330, plus the trustee's allowed counsel fees under section 330, would be paid.  The balance of the funds would be distributed to Ms. Ardary, the sole creditor with an allowed claim in this case.  In addition, at the same time as the debtor was tendering the agreed sum to the trustee, the debtor and his wife would also present a note in the amount of $15,000 in favor of Ms. Ardary, secured by a mortgage on their Philadelphia residence.  This promissory note, however, would bear no interest, nor any specific maturity date.  The note would be payable only from the proceeds of the sale of the Hill Road realty, or upon the death of both the debtor and Mrs. Romano.  Thus, as long as either Mr. or Mrs. Romano resided in the Hill Road property, the note held by Ms. Ardary would not be payable and would not accrue interest: nor could she foreclose upon the realty.

9

Finally, and also relevant, the parties agreed that if the debtor failed to tender $20,000 to the trustee, or if he and his wife failed to present the note and mortgage to Ms. Ardary, the settlement agreement among them was null and void.  Ex. A-14.

Mr. Romano paid timely $20,000 to the trustee, but he refused to sign the note and mortgage in favor of Ms. Ardary.  He took the position that he never understood this aspect of the settlement and considered it unfair and unnecessary.  As his rejection of this component nullified the settlement, the trustee then requested that his motion to sell and the debtor's motion to amend his exemptions be relisted for hearing, which request was granted and a hearing was held on August 27, 2007.[10]  Thereafter, the parties were afforded the opportunity to submit post-hearing memoranda.

III.

Since the trustee's motion to sell is predicated upon the Philadelphia realty not being exempt, see, e.g., In re Covington, 368 B.R. 38, 40-41 (Bankr. E.D. Cal. 2006)

---

[10]The debtor's failure to consummate the settlement, whose terms were stated in his presence in open court on June 20th, and whose terms he acknowledged and agreed to at that time, appear to have embarrassed his attorney and troubled his spouse.  (Indeed, counsel later sought to withdraw from this case, which request was denied for reasons stated in open court.)  Attempts to revive the settlement prior to presentation of evidence on August 27th, by explaining to the debtor that neither he nor his wife need repay the note and mortgage during their lifetimes, and that they could remain in their residence as long as they wished, were unavailing.

Mr. Romano is convinced that the trustee and Ms. Ardary should be satisfied with the $20,000 tendered, plus title to the trailer, and are entitled to no more.  Neither the trustee nor Ms. Ardary are so agreeable, partly because they have incurred considerable counsel fees.  The trustee estimated that his counsel fees were about $12,000 as at the conclusion of the June 20th hearing, and have since increased by the debtor's refusal to consummate the settlement and the need for an additional hearing.  Ms. Ardary's counsel had also incurred additional fees.  See Ex. A-16.

(a bankruptcy trustee cannot administer exempt property), I shall first consider the debtor's motion to alter his exemption election from federal to state law.[11]

The trustee and Ms. Ardary raise two grounds for denying the debtor his current effort to elect Pennsylvania exemption laws to protect his interest in real and personal property from liquidation by the trustee. First, the objectors assert that the debtor cannot amend his exemption schedule because the exemption issue was previously litigated in November 2005, and principles of res judicata now govern. Alternatively, the trustee and Ms. Ardary assert that allowing the debtor to amend his exemptions at this

_____

[11]Section 522(b)(2)(B) [the statutory citation in effect when the debtor filed his bankruptcy petition, see, e.g., In re Peterson, 897 F.2d 935 (8th Cir. 1990) (holding that the law and facts as they existed on the date of the debtor's bankruptcy filing, determine a debtor's available exemptions)] permits a debtor in bankruptcy to claim as exempt an interest in entireties property to the extent that this interest is exempt from process under applicable nonbankruptcy law. In Napotnik v. Equibank and Parkvale Savings Ass'n, 679 F.2d 316, 318 (3d Cir. 1982), the Third Circuit Court of Appeals held, in construing section 522(b)(2)(B): "Since property law in general and the law of co-tenancies in particular are creatures of state law, the 'applicable nonbankruptcy law' is the applicable Pennsylvania law of tenancy by the entirety." Furthermore, after analyzing Pennsylvania's common law concerning entireties property, the Third Circuit concluded that, as joint creditors may execute upon entireties property, when one spouse files for bankruptcy, that spouse may not claim as exempt from any joint creditors his interest in entireties property. Id. at 321-22.

Thus, when one spouse only files for bankruptcy and there are only joint creditors, entireties property cannot be claimed as exempt. See Napotnik. Conversely, when only one spouse files a bankruptcy petition and there are no joint creditors, the debtor's interest in entireties property has been held as exempt under section 522(b)(2)(B). See, e.g., In re Knapp, 285 B.R. 176 (Bankr. M.D.N.C. 2002); In re Koesling, 210 B.R. 487 (Bankr. N.D. Fla. 1997); In re Pernus, 143 B.R. 856, 858-59 (Bankr. N.D. Ohio 1992). When one spouse files a voluntary petition in bankruptcy and owns property by the entireties, and there are both joint and individual debts, the entireties property is not exempt and may be administered, but for the benefit of joint creditors only. See Sumy v. Schlossberg, 777 F.2d 921, 928 (4th Cir. 1985); In re Pepenella, 103 B.R. 299, 302 (M.D. Fla. 1988); In re Balber, 112 B.R. 6, 8 (Bankr. W.D. Pa. 1990); Matter of Cipa, 11 B.R. 968, 973 (Bankr. W.D. Pa. 1981); 4 Collier on Bankruptcy, ¶ 522.10[3], at 522-78.3 (15th ed. rev. 2007).

Here, the debtor argues and I accept that Ms. Ardary is not a joint creditor. The mortgagee is a joint creditor, but it has not filed any proof of claim. Thus, if the Philadelphia realty were exempt by virtue of Pennsylvania entireties law, the trustee could not administer that property for the benefit of Ms. Ardary, the only creditor with an allowed claim.

time is prejudicial to the trustee, who has proceeded to administer the assets based upon

the debtor's election of the federal exemptions, and to Ms. Ardary, who has engaged

counsel to ensure a distribution from non-exempt property and who has incurred counsel

fees in that effort.  The debtor counters that given the length of time he has resided in the

property, his ill-health, and the inability of Ms. Ardary to reach his realty prior to his

bankruptcy filing, it would be unfair to deny him the opportunity to protect it and his

retirement funds.  The debtor also maintains that the trustee can retain the $20,000 paid to

him to offset any expenses incurred by his counsel.


## A.


Res judicata, or claim preclusion "applies to claims that 'were or could have

been raised' in a prior action involving the 'parties or their privies' when the prior action

had been resolved by 'a final judgment on the merits.'"  In re Graham, 973 F.2d 1089,

1093 (3d Cir. 1992) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)); see also

Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) ("Federal law of claim

preclusion requires a defendant to demonstrate that there has been (1) a final judgment on

the merits in a prior suit involving (2) the same parties or their privies and (3) a

subsequent suit based on the same cause of action.").  "Claim preclusion thus bars

relitigation of any claim that could have been raised in the prior action even if it was not

so raised."  In re Graham, 973 F.2d at 1093.

Although application of this preclusion principle in bankruptcy cases often

concerns prepetition state court judgments, see generally In re Genesys Data

12

Technologies, Inc., 245 F.3d 312 (4th Cir. 2001), it also applies to all bankruptcy court

rulings that are final orders.  See In re Fulton Bellows & Components, Inc., 301 B.R. 723

(Bankr. E.D. Tenn. 2003) (denial of debtor's motion to reject union contract, pursuant to

11 U.S.C. § 1113, precluded a second motion for the same relief, even though new

proposals had been offered to the union).  For example, an order granting a bankruptcy

counsel's application for an allowance of fees may preclude a later malpractice claim

against that attorney, if the claim is based upon the quality of the bankruptcy

representation.  See, e.g., Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003); In re

Iannochino, 242 F.3d 36 (1st Cir. 2001).

        In this contested matter, the trustee and Ms. Ardary are correct that the

preclusive effect of res judicata has been deemed relevant to disputes involving

objections to a debtor's exemption claims.  See, e.g., In re Cogliano, 355 B.R. 792, 805-

06 (B.A.P. 9th Cir. 2006); In re Magallanes, 96 B.R. 253 (B.A.P. 9th Cir. 1988); In re

Daniels, 270 B.R. 417 (Bankr. E.D. Mich. 2001); see also In re Wolfberg, 255 B.R. 879

(B.A.P. 9th Cir. 2000) (terms of confirmed plan precluded amendments to exemption

claims).  This follows because an order either sustaining or overruling an objection to an

exemption claim is subject to immediate appeal, and thus constitutes a final judgment as

defined by Fed. R. Bankr. P. 7054(a).[12]  See, e.g., Preblich v. Battley, 181 F.3d 1048,

1056 (9th Cir. 1999) ("[A] bankruptcy court's order denying a claim of exemption is a

final, appealable order under 28 U.S.C. § 158(a)(1) and any appeal from such an order

_____

        [12]Rule 7054(a) incorporates Fed. R. Civ. P. 54(a).  The latter defines a judgment
as including "any order from which an appeal lies."  And Fed. R. Bankr. P. 9014(c) incorporates
Rule 7054 into contested matters, such as objections to exemption claims.  See In re Daniels, 270
B.R. 417, 421 (Bankr. E.D. Mich. 2001); In re Bandkau, 187 B.R. 373, 374 (Bankr. M.D. Fla.
1995).

must be taken within the time allowed under the bankruptcy rules, or the right to appeal

will be waived."); Kollar v. Miller, 176 F.3d 175 (3d Cir. 1999) (appeal from order

sustaining the trustee's objection to the debtor's exemption); In re Price, 2004 WL

2550590 (W.D. Tex. Oct. 27, 2004) (appeal from a denial of an objection to an

exemption); see also 9 Collier on Bankruptcy, ¶ 4003.03[2], at 4003-13 (15th ed. rev.

2007) ("An order denying a claim of exemption is a final, appealable order.").

Whenever a debtor has claimed certain property as exempt, the bankruptcy

trustee has objected to that exemption claim, and there has been a final, non-appealed

ruling sustaining the trustee's objection, all of the elements of claim preclusion have been

established, and so the debtor cannot later amend her exemptions to relitigate that issue:

> Bankruptcy courts should disallow an amended claim of
> exemption where the purpose and/or the effect of the
> amendment is to allow the debtor to relitigate an exemption
> claim which has already been determined by the court.

In re Daniels, 270 B.R. 417, 422 (Bankr. E.D. Mich. 2001).

Two reported decisions from the Bankruptcy Court for the District of

Minnesota have applied claim preclusion to deny a chapter 7 debtor's motion to amend

exemptions by changing exemption elections under section 522(b), when such

amendment has been sought after an adverse ruling on exemptions.  In re Walls, 249

B.R. 506 (Bankr. D. Minn. 2000), a debtor claimed as exempt his interest in an IRA

account under federal bankruptcy law, and the trustee objected.  After the trustee's

objection was sustained, the debtor was later precluded from amending his exemption to

claim that same IRA account as exempt under state law.  Similarly, in In re Marshall, 224

B.R. 399 (Bankr. D. Minn. 1998), a debtor was barred from amending his exemption

claim involving a pending tort action to utilize federal bankruptcy law after the trustee's

14

successful objection to the debtor's earlier exemption claim of that same asset under state law.

The application of res judicata, however, will not preclude a debtor from filing amended exemptions under Rule 1009(a), unless a final order denying an exemption claim for the same asset has previously been entered.  See generally In re Magallanes.  Nor is the debtor precluded subsequently from arguing that the challenged property is not property of the bankruptcy estate, rather than exempt.  See In re Cogliano, 355 B.R. at 804-05.  Those exceptions aside, preclusion principles suggest that whenever a trustee has filed an exemption objection, the debtor is obligated to analyze this objection and make any necessary amendments prior to any ruling, not afterward.

As one court has observed, the obligation of a debtor to carefully review and modify his exemption claims when challenged by the bankruptcy trustee, or be precluded from later amendment, mirrors the trustee's duty to analyze timely the debtor's exemption claims or be barred from any later challenge, as held in Taylor v. Freeland & Kronz, 503 U.S. 638 (1992).  Both requirements have a salutary effect upon the administration of bankruptcy cases:

> They promote the expeditious resolution of exemption claims and the efficient administration of the bankruptcy estate.  The inverse implication of Taylor's holding that the trustee is precluded from asserting a valid objection to a debtor's claimed objection, where he has failed to object within the time limits established by the procedural rules, is that the debtor may not assert a valid claim of exemption, where he has failed to appropriately defend that claim when attacked by the trustee's objection.

In re Daniels, 270 B.R. at 424.

In this dispute, the record is clear that Ms. Ardary objected to the debtor's

exemption claims in October 2005, and these objections as to the debtor's realty (and IRA

accounts) were sustained by a final order dated November 21, 2005.  Based upon the

debtor's Schedule C election, he was allowed the federal bankruptcy exemptions under

section 522(d).  He was not allowed to exempt the four IRA accounts under section

522(d)(10)(E), for lack of evidence.  This order was entered without any response from

the debtor.

The debtor, who was served with this order, as was his counsel, did not file

a notice of appeal from this adjudication, nor did he seek reconsideration under Fed. R.

Bankr. P. 9023 or relief from that order by virtue of Fed. R. Bankr. P. 9024.  Accordingly,

his motion to amend schedule C (based upon procedural bankruptcy rule 1009(a)), filed

approximately 18 months later, to exempt the same property by utilizing a different legal

theory, is now precluded:

> Rule 1009(a) does not assist debtors.  First, the right to amend
> schedules to add exemptions "is not the same as the right to
> the exemption."  In re Andermahr, 30 B.R. 532, 534 (9th Cir.
> BAP 1983).  The issue before the bankruptcy court was an
> objection to the exemption.  Even if debtors could amend
> their schedules to claim the exemption, the mere fact that they
> can claim the exemption does not necessarily mean that they
> are entitled it.

In re Wolfberg, 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000).


B.


The recent decision by the Eight Circuit Court of Appeals in In re Ladd,

450 F.3d 751(8th Cir. 2006), holding that claim preclusion did not bar debtors from

16

changing their exemption election under section 522(b) after a final order was entered

addressing that very election issue, does not persuade me to alter my conclusion.

However, <u>Ladd</u> does implicate a different issue implicitly addressed by the three parties in

these contested matters.

   In <u>Ladd</u>, the chapter 7 debtors elected the federal bankruptcy exemptions

and under them claimed their farm realty as exempt, as well as claiming exempt other

miscellaneous personal property that would not have been exempt under state law.  The

bankruptcy trustee objected to the realty exemption claim on the basis that the value of

the farm property exceeded the homestead exemption ceiling under section 522(d)(1), and

so this excess value was non-exempt.  The debtors did not respond to the trustee's

objection, the Eighth Circuit concluded, because to do so would not have been cost

effective:

> Once the Trustee objected to the homestead exemption,
> questioning the value of the Ladds' homestead interest, it
> became too costly to proceed with the federal exemptions
> because the Ladds would have had to obtain expert testimony
> and expend attorney fees for litigation regarding the value of
> their homestead.  Since the value of the miscellaneous
> personal property was so low, it was not worth the expense of
> litigation over the valuation of their homestead.  So rather
> than litigate the federal homestead issue, and assuming that
> they could amend their schedules at any time before the close
> of the bankruptcy case pursuant to Rule 1009, the Ladds
> chose not to fight the objection and allowed a default
> judgment on the federal exemption to be entered against them.

<u>In re Ladd</u>, 450 F.3d at 754.

   The Eighth Circuit Court of Appeals then held that the debtors were not

precluded from amending their exemption election—from those provided by federal

bankruptcy law under section 522(d) to those provided by state law, which amendment

would protect their farm property regardless of its value—because they had no financial

incentive to litigate the objection to exemption file by the trustee:

> Under these circumstances, we find that the cause of action is
> not the same for res judicata purposes.  The key operative
> facts of the federal exemption litigation would have been
> whether the Ladds' interest in the homestead was greater than
> the maximum allowed by federal bankruptcy law–$34,850.
> The key facts in a proceeding under the Minnesota exemption
> would be whether their homestead interest exceeded 160 acres
> or the $500,000 limit.  The substance of what the debtors
> would have to prove in each action is substantially different.
> Under federal law, a debtor's focus would be on value, and
> under Minnesota law, it would be on acreage.

> Since the Ladds had so little equity in their home, it made
> sense for them to initially proceed under the federal scheme
> and try to exempt other personal property pursuant to the
> wildcard statute.  But there was "little motivation" and "little
> incentive" for the Ladds to engage in costly litigation
> defending the federal homestead exemption in order to
> exempt $1,600 worth of personal property.

Id., at 754-55.

Having decided that res judicata did not prevent the debtors from amending

their exemption claims, the Eighth Circuit then considered whether the amendment

should be barred due to "bad faith" or "prejudice" to creditors.  Id., at 755.  It held that

there was no evidence offered to bar the amendment on those grounds:

> Because there have been no allegations of bad faith by the
> debtors or prejudice to the creditors, we hold that the
> bankruptcy court abused its discretion in not allowing the
> Ladds to amend their schedules to claim the Minnesota
> homestead exemption.

Id., at 755.

The Ladd court thus concluded, in upholding the debtors' right to amend

their exemption claims, that the earlier adverse ruling had been entered by default, that

18

the debtors' inaction was excused by a lack of financial incentive to challenge the exemption objection, and that other interested parties would not be prejudiced by a subsequent amendment. Insofar as the appellate court was concluding that res judicata did not apply in those circumstances, I respectfully disagree. It has long been held that "[a] judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default." Riehle v. Margolies, 279 U.S. 218, 225(1929); accord, e.g., Matter of McMillan, 579 F.2d 289, 293 n.6 (3d Cir. 1978). Moreover, "[w]hether there is prejudice has to do with the right to amend under Rule 1009(a), but is irrelevant to the res judicata analysis." In re Wolfberg, 255 B.R. at 883 n.6. Finally, the issue before the bankruptcy court—whether the debtors' interest in the farm realty was exempt—was adjudicated by a final order, which order the debtors' amendment sought to overturn.

Although I find unpersuasive the Ladd court's analysis concerning claim preclusion, there is a well-recognized connection between the enforcement of a default judgment and the issue of prejudice to parties. Federal Rule of Civil Procedure 55(c) (incorporated by Fed. R. Bankr. P. 7055) provides:

> For good cause shown the court may set aside the entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Where, as in this contested matter, a judgment or final order has been entered by default, three factors are typically considered in determining whether to grant a party relief from that judgment or order: "1) whether the plaintiff will be prejudiced if the default is lifted; 2) whether the defendant has a meritorious defense; and 3) whether the default was the result of the defendant's culpable misconduct." Hritz v. Woma Corp.,

732 F.2d 1178, 1181 (3d Cir. 1984); see also Gross v. Stereo Component Systems, Inc.,

700 F.2d 120, 122 (3d Cir. 1983).[13]

 Thus, in essence, the Eighth Circuit determined in Ladd that it was an abuse

of discretion for the bankruptcy court not to grant the debtors relief from the default order

regarding their farm realty exemption claim, based essentially upon finding that all three

elements for relief from a default judgment were proven.  Similarly, Ms. Ardary's

objection to Mr. Romano's exemption election in November 2005 was entered by default.

However, unlike the Ladd decision, both she and the chapter 7 trustee expressly argue

that they would be prejudiced if Mr. Romano were granted relief from the November

2005 order restricting his exemption claims to those permitted by section 522(d).  They

raise the issue of prejudice, though, in the context of application of Fed. R. Bankr. P.

1009(a), rather than in the context of Rule 7055.


C.


 Although Rule 1009(a) affords a debtor the opportunity to amend his

bankruptcy schedules, including his schedule of exemptions, at any time prior to the

closing of the case, see, e.g., Matter of Yonikus, 996 F.2d 866, 871-72 (7th Cir. 1993), it

---

[13]As noted recently by the District Court:

[A]lthough some older Third Circuit opinions include a fourth
factor, the effectiveness of alternative sanctions . . . the balance of
authority adopts the three-factor approach.

Stone v. Brennan, 2006 WL 2092583, at *1 (E.D. Pa. 2006).

is long understood that this right to amend has certain equitable constraints.  See In re
Kaelin, 308 F.3d 885, 889 (B.A.P. 8th Cir. 2002); Matter of Yonikus, 996 F.2d at 872; In
re Doan, 672 F.2d 831, 833 (11th Cir. 1982).

As I previously noted in In re Cudeyro, 213 B.R. 910 (Bankr. E.D. Pa.
1997), it is well settled that a debtor's right to amend her exemptions will be prohibited
upon a showing of bad faith or prejudice.  See, e.g., In re Hannigan, 409 F.3d 480, 481
(1st Cir. 2005) ("[A] bankruptcy court has discretion to deny the amendment of
exemptions where the amendment would prejudice creditors or where the debtor has
acted in bad faith or concealed assets."); In re Kaelin, 308 F.3d 885, 888 (8th Cir. 2002);
Payne v. Wood, 775 F.2d 202, 205 (7th Cir. 1985); In re Doan, 672 F.2d 831, 833 (11th
Cir. 1982).

Since amendments to schedules are generally permitted as a matter of
course, it is incumbent upon the party objecting to the proffered amendment to
demonstrate that prejudice or bad faith warrant denial of the right to amend a debtor's
exemption claims.  Tignor v. Parkinson, 729 F.2d 977, 979 (4th Cir. 1984); see In re
Kobaly, 142 B.R. 743, 748 (Bankr. W.D. Pa. 1992).  One indicia of prejudice appears to
be the existence vel non of reliance made upon the debtor's exemption election prior to
the proffered amendment.

Thus, prejudice may arise, for example, where a trustee has incurred
considerable expense in efforts to sell certain property, which efforts he or she might have
foregone had the debtor initially claimed such property as exempt.  That is, in those
instances the trustee may be understood to have acted in reliance upon the debtor's initial
schedules, and having taken such actions may be prejudiced if the amendments were

21

allowed.  <u>See</u>, <u>e.g.</u>, <u>Matter of Eldridge</u>, 15 B.R. 594, 595 (Bankr. S.D.N.Y. 1981)

(debtor's attempt to change exemptions after trustee had contracted to sell the subject

property was disallowed); <u>In re Santoro</u>, 3 B.R. at 212 (debtors were denied the right to

amend exemptions after the trustee had sold the property at issue); <u>see</u> <u>also</u> <u>Hardage v.</u>

<u>Herring Nat'l Bank</u>, 837 F.2d 1319, 1324 (5th Cir. 1988) (prejudice may occur if

creditors have detrimentally relied upon the debtor's original exemption claim).

       Another instance of prejudice may arise when debtors attempt to amend

their exemptions "after they have sought relief relating to the originally claimed

exemption." <u>In re Gonzalez</u>, 149 B.R. 9, 11 (Bankr. D. Mass. 1993) (debtors denied

increased homestead exemption amendment after lien avoidance litigation).

Prejudice has also been found to accrue where a debtor exhibits "inordinate delay" in

amending his exemption schedules.  <u>In re Jelinek</u>, 97 B.R. 429, 432 (Bankr. N.D. Ill.

1989) (discussing <u>In re Patel</u>, 43 B.R. 500 (N.D. Ill. 1984)).  As stated by one court,

prejudice may be found to attend such delay:

> To allow a debtor to amend his claim of exemptions at this
> late date would clearly be inequitable and would hinder the
> diligent administration of the bankruptcy estate by the
> Trustee.  Because to allow the Debtor to amend his claim of
> exemptions at this late date would have an adverse impact on
> creditors whose rights have attached to the assets of the
> bankruptcy estate and because a late amendment to the
> Debtor's claim of exemptions would hinder the diligent
> administration of the bankruptcy estate by the Trustee, the
> amendment is not seasonable and, therefore, not allowed.

<u>In re Snow</u>, 21 B.R. 598, 600 (Bankr. E.D. Cal. 1982).

       Phrased somewhat differently, "[a]t some point, the debtor's election of

either the state or federal exemptions must become irrevocable so as to avoid any unfair

prejudice to the trustee and unsecured creditors."  <u>In re Brewer</u>, 17 B.R. 186, 188 (Bankr.

22

M.D. Tenn.), aff'd, 22 B.R. 983 (M.D. Tenn. 1982); see In re Duggan, 4 B.R. 709, 711

(Bankr. N.D. Tex. 1980) ("[a]t some point the right to switch from one system to another

must end and there be some finality to a choice); In re Korff, 14 B.R. 189, 193 (Bankr.

E.D. Mich. 1981); see also In re Reed, 1995 WL 227389 (9th Cir. 1995) (debtor might

have been entitled to amend exemptions, but lost that entitlement by "plung[ing] the

bankruptcy estate into lengthy litigation," and by not requesting his amendment in a

seasonable manner).

   In this contested matter, the trustee and Ms. Ardary have demonstrated that

prejudice would arise by permitting the debtor now to switch his exemption election from

federal to state law.  The debtor knew or should have known about Ms. Ardary's desire

for the trustee to administer the Philadelphia realty, as well as the IRA accounts, as early

as October 2005, when her objection to his exemptions was first filed.  He was aware in

November 2005 that her challenge was sustained and his realty exemptions under state

law and IRA exemptions under federal bankruptcy law were disallowed.  He further

learned of the trustee's efforts to administer those assets not later than April and May

2006, when the trustee sought turnover of the IRA accounts from Wachovia and engaged

a real estate broker to sell the Philadelphia realty.  He was also aware of the trustee's

attempts to have a real estate broker sell his residence, and also of the trustee's demand

for him to turn over funds in his possession stemming from the IRA accounts by July

2006.

   All of these activities involved the expenditure of time and effort by the

trustee and by those professionals engaged by him and, to a lesser extent by Ms. Ardary.

Moreover, Ms. Ardary has not filed any complaint under 11 U.S.C. § 523(a) to have her

debt declared non-dischargeable.  She can no longer do so under Fed. R. Bankr. P.

4007(c).  Her inaction conceivably could have been based upon the debtor's initial

exemption election and the creditor's belief that she would be paid in this bankruptcy case

from non-exempt property.  The debtor offered no explanation for his lengthy delay in

waiting until April 2007 to amend his exemptions.  (Indeed, according to my notes, his

counsel acknowledged the need to take some action at a hearing held in August 2006.)

      Whether efforts by a bankruptcy trustee to sell entireties real estate for the

benefit of an individual creditor, such as occurred here, would by themselves preclude a

chapter 7 debtor from utilizing Rule 1009(a) to amend his exemption election to state law

so long as he compensated the trustee and his professionals, I need not now decide.

Compare In re Henry-Chandler, 2006 WL 4547188 (Bankr. D. Md. 2006) with In re

Szymanski, 189 B.R. 5 (N.D. Ill. 1995).  In addition to those efforts to administer

property, the trustee and Ms. Ardary acted in reliance upon the November 21, 2005 final

order, entered by default, which upheld the debtor's initial election of the federal

bankruptcy exemptions (except as concerned the IRA accounts).  See Ex. A-16 (bills

issued by Ms. Ardary's counsel).

      The debtor's initial failure to respond to Ms. Ardary's objections despite

notice, his 18 month delay in seeking amendment of his exemptions, and the reliance

efforts expended by the trustee and Ms. Ardary, support precluding relief from the

November 2005 order.  See generally Nationwide Mut. Ins. Co. v. Starlight Ballroom

Dance Club, Inc., 175 Fed. Appx. 519 (3 Cir. 2006) (not precedential); In re Taylor, 357

B.R. 360 (Bankr. W.D. Pa. 2006).  Claim preclusion, coupled with the right of a court to

deny bankruptcy schedule amendments when prejudicial, warrant sustaining the

objections of Ms. Ardary and the trustee to Mr. Romano's motion to amend his exemption election.

An order will be entered to that effect, but it also will direct the trustee to return to Mr. Romano the $20,000 tender as part of the unconsummated settlement.

## IV.

Having determined that Mr. Romano cannot at this late date exempt his interest in this Hill Road residence, I must now consider the trustee's motion to sell the residence pursuant to 11 U.S.C. § 363(b), (f) and (m) via public auction.

Section 363(b) authorizes a trustee to sell property of the bankruptcy estate out of the ordinary course of business.  Section 363(f) permits a trustee to sell property of the estate free and clear of liens, if one of five circumstances apply.[14]  Here, however, only Mr. Romano has filed a bankruptcy petition.  His interest in the Hill Road property is property of the bankruptcy estate under section 541(a), even though the property is held as tenants by the entireties.  Napotnik v. Equibank & Parkvale Savings Ass'n, 679 F.2d 316, 318 (3d Cir. 1982); see also In re Brannon, 476 F.3d 170 (3d Cir. 2007).  However, Mrs. Romano's interest in that realty is not property of the bankruptcy estate.  See Winters By and Through McMahon v. George Mason Bank, 94 F.3d 130, 134 (4th Cir. 1996) ("Most courts find that the debtor's interest in property jointly held by a nondebtor

---

[14]Section 363(m) concerns issues of good faith and the effect of an appeal upon an order approving a sale under section 363.

becomes property of the estate upon the filing of the bankruptcy petition, but that the nondebtor's interest is not property of the estate.").

Although not expressly stated in the trustee's motion, it is apparent that the trustee is proposing to auction the entire Hill Road realty, not just the debtor's interest in it. "In those cases where entireties property is not exempt . . . the trustee may obtain authority to sell the property, including a nondebtor spouse's interest, pursuant to section 363(h)." 4 Collier on Bankruptcy, ¶ 522.10[3], at 522-78.2 (15th ed. rev. 2007) (footnote omitted).

Section 363(h) provides:

Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

If a sale is approved under subsection (h), then the following subsections of § 363 also apply to protect the rights of the non-debtor:

26

(i) Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

11 U.S.C. § 363(i) and (j).

Accordingly, upon certain conditions, a bankruptcy trustee can sell property co-owned by the debtor, see In re Kahan, 28 F.3d 79, 80 n.1 (9th Cir. 1994), with the co-owner receiving her interest in the sale proceeds, In re Flynn, 418 F.3d 1005, 1007 (9th Cir. 2005), and with the co-owner having an ability to purchase the debtor's interest from the trustee.  See In re Dehar, 2003 WL 21991629, at *3 (Bankr. D.N.H. Aug. 6, 2003) ("The Bankruptcy Code expressly preserves the economic interests of non-debtor co-owners in the proceeds of sale of property without their consent"); In re Sturman, 222 B.R. 694, 708 (Bankr. S.D.N.Y. 1998) ("[U]nder Code § 363 all co-owners affected by the trustee's power to sell property free and clear of their interests are protected or compensated in several manners, including the right to obtain from the net sale proceeds compensation for their interests in the property under subsection (j) and a right of first

refusal to purchase the property at the sale price under subsection (i).") ((footnotes

omitted).[15]

Section 363(h) was enacted by Congress to "remedy a problem that arose

under the Bankruptcy Act of 1898 (the 'Act') in cases involving individual debtors who

owned undivided interests in property." In re Sturman, 222 B.R. at 707.  As the

bankruptcy court in Sturman observed:

> Under the Act, the trustee in bankruptcy could only sell that
> portion of the individual debtor's property in which the
> trustee acquired title.  See, Former Bankruptcy Act §70.
> Since the trustee only acquired title to the debtor's undivided
> interest in property, that interest was all that could be sold in a
> partition sale.  This restriction often resulted in two sales,
> each at a depressed value since bidders at each sale were not
> willing to pay full value for cotenancy.  The drafters of what
> was to become Code § 363(h) sought to permit the trustee to
> sell both the debtor's and non-debtor's interest in a single sale
> under the premise that bidders purchasing the entire interest
> will pay a higher price that reflects the full market value.

222 B.R. at 707 (footnotes omitted).

Generally § 363(h) sales have occurred "where property, usually the

homestead, is owned as tenants by the entirety or as joint tenants between a husband and

wife (or between a man and woman who were formerly married), only one of whom is a

debtor." Id., at 708.

Had the trustee properly sought relief under section 363(h), the primary

issue would be posed by section 363(h)(3): whether the benefit to the bankruptcy estate

from the sale would outweigh the detriment to the co-owner, Mrs. Romano.  See id.  If

not, the sale of her interest could not occur.  See generally In re Persky, 893 F.2d 15 (2d

---

[15]The trustee's sale proposal does not address this issue, which can affect an
auction sale.  See generally 3 Collier on Bankruptcy, ¶ 363.08[8] (15th ed. rev. 2007).

Cir. 1989); In re Harris, 155 B.R. 948 (Bankr. E.D. Va. 1993). Here, I need not reach this issue because it is not properly before me.

Under the procedural rules applicable to disputes under the former Bankruptcy Act, Fed. R. Bankr. P. 701(3) provided that authority for a trustee sale of estate property free and clear of liens should be sought via adversary proceeding: i.e., complaint served with a summons. See 13 Collier on Bankruptcy, ¶ 701.06 (14th ed. 1977). Current Fed. R. Bankr. P. 6004(c) permits such relief under section 363(f) to be requested by motion. See In re Trans World Airlines, Inc., 2001 WL 1820325, at *9 (Bankr. D. Del. 2001). However, Fed. R. Bankr. P. 7001(3) states that relief under 11 U.S.C. § 363(h) should be sought via adversary proceeding. See, e.g., In re Lyons, 995 F.2d 923 (9th Cir. 1993); Szyszko v. Szyszko, 2001 WL 766905, at *4 (N.D. Ill. 2001).

The added formalism of requiring a complaint and summons whenever a trustee seeks to sell property owned by a debtor and co-owner under section 363(h) may be a reflection upon the consequences for non-debtors and the issues posed by the statute. As one commentator observed:

> Since the interests of co-owners might be adversely affected by such a sale and satisfaction of the first three listed requirements is likely to raise sharply disputed issues of fact, Rule 7001, clause 3, requires an adversary proceeding in which the co-owners are defendants to obtain court approval of such a sale.

10 Collier on Bankruptcy, ¶ 7001.04, at 7001-14 (15th ed. rev. 2007).

Clearly, the trustee in this dispute did not file a complaint under section 363(h), nor serve that complaint upon Mrs. Romano with a summons to respond. I appreciate though that in certain instances courts have overlooked this procedural defect or considered the error waived. See, e.g., In re Cannonsburg Environmental Associates,

29

Ltd., 72 F.3d 1260, 1265 (6th Cir. 1996) ("[A]lthough the Trustee should have filed an

adversary complaint instead of a motion, this error was harmless."); Matter of Village

Mobile Homes, Inc., 947 F.2d 1282, 1283 (5th Cir. 1991) ("Compliance with the

requisites of an adversary proceeding may be excused by waiver of the parties."); In re

Zolner, 249 B.R. 287, 292 (N.D. Ill. 2000) ("[U]nless the party is able to demonstrate

prejudice by the failure to file an adversary proceeding, a court will find the error [in

filing a motion instead a complaint] constitutes harmless error."); In re Orfa Corp., 170

B.R. 257, 275 (E.D. Pa. 1994) ("Nevertheless, in some cases where a matter was

improperly initiated by motion as a contested matter, 'courts have concluded that where

the rights of the affected parties have been adequately presented so that no prejudice has

arisen, form will not be elevated over substance and the matter will be allowed to proceed

on the merits as originally filed.'") (quoting In re Command Services Corp., 102 B.R.

905, 908 (Bankr. N.D.N.Y. 1989)); In re Little, 220 B.R. 13, 17 (Bankr. D.N.J. 1998)

("Generally speaking, most courts are willing to overlook deficiencies in a pleading,

including errors in presenting a complaint as a motion and vice versa, so long as the

pleading substantially complies with the rules of pleadings. . . . Such pleading

deficiencies are considered harmless error when it can be demonstrated that there exists

no prejudice to the non-moving party because the filed pleading provides the non-movant

with notice of the nature of the pending litigation."); In re Vandy, Inc., 189 B.R. 342, 346

(Bankr. E.D. Pa. 1995) (where no party raised the issue, and where no prejudice would

result, the bankruptcy court can overlook the error in filing a motion instead of a

complaint). Indeed, at least one court has followed this approach concerning relief under

section 363(h). In re Sutton, 1990 WL 25050 (D.N.J. 1990). Contra In re Lyons.

30

In this instance, however, it would not be appropriate to overlook this procedural defect nor consider the issue waived by Mrs. Romano, who is a non-debtor acting pro se. As mentioned above, the trustee's sale motion does not request relief under section 363(h). Nor was the motion itself served upon Mrs. Romano under Rule 7004. She knew of the scheduled hearing on the motion (probably learning of it from her husband) and attended that hearing, but did so without benefit of counsel. Furthermore, from observing her at the hearing, I conclude that she is not a sophisticated individual who would have any understanding of the procedural issue or of her rights under sections 363(h), (i) and (j). Thus, her failure to raise the procedural and service problems should not be considered a waiver. See Matter of Haber Oil Co., Inc., 12 F.3d 426, 440 (5th Cir. 1994) ("Cases suggest that courts should not find waiver of the procedural protections required in adversary proceedings unless the parties are apprised of and have a chance to address all the issues being decided."); see generally In re Zale Corp., 62 F.3d 746, 764 (5th Cir. 1995) ("When third parties are affected, we scrutinize carefully the fairness of the hearing afforded."). Finally, dismissal of the trustee's motion, without prejudice, due to this procedural error would not bar the trustee from initiating the requisite adversary proceeding as there are no deadlines or limitations periods implicated in this dispute.

Therefore, the trustee is not entitled to relief under section 363(h) because of his failure to seek it by adversary proceeding properly served upon the co-owner. See In re Lyon. And if I consider the motion solely one under section 363(f) involving the debtor's interest in the Hill Road realty, no evidence demonstrated that selling the debtor's interest in that property, by itself, at public auction free and clear of liens (with the liens attaching to the proceeds) would benefit the estate. See generally In re Golf,

L.L.C., 322 B.R. 874 (Bankr. D. Neb. 2004) (denying approval of a sale under section 363(f) that would not benefit the bankruptcy estate).  It is unlikely that the sale of the debtor's interest alone would have much value.

Accordingly, the trustee's motion to sell under section 363(f) shall be denied, albeit without prejudice.  An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :    Chapter 7

JOHN ROMANO                                    :

              Debtor             :    Bankruptcy No. 05-15742bf

................................................

ORDER

................................................

AND NOW, this 11th day of October 2007, for the reasons stated in the

accompanying memorandum, it is hereby ordered as follows:

1. The debtor's motion for leave to "change his Schedule 'C' option to

'State Exemptions' and/or ordering that the real property situate [at] 7411 Hill Road,

Philadelphia, PA and debtor's Individual Retirement Accounts are exempt by virtue of the

hardship presented" is denied;

2. The trustee's motion to sell the realty on 7411 Hill Road free and clear of

all liens (with all valid liens attaching to the sale proceeds) at public auction under

"[s]ections 363(b), (f), and (m) and 105 of the Bankruptcy Code" is denied without

prejudice; and

3. The trustee shall return to the debtor forthwith all funds tendered by the

debtor, pursuant to the terms of the settlement announced in open court on June 20, 2007,

as that settlement is null and void by its own provisions.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Mr. John Romano
Mrs. Mary Romano
7411 Hill Road
Philadelphia, PA 19128

Barry A. Rosen, Esq.
Levin & Cooper
111 E. Township Line Road
Upper Darby, PA 19082

Terry P. Dershaw, Esq.
Dershaw Law Offices
P.O. Box 556
Bryn Athyn, PA 19009-0556

Edward J. Didonato, Esq.
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103

Gary Bressler, Esq.
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102